UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| WILLIAM O'KELLY, | ) | 2:06-CV-00170-RCJ-LRL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VANGUARD INTEGRITY PROFESSIONALS, INC., a Nevada corporation; VANGUARD INTEGRITY PROFESSIONALS – NEVADA, a Nevada corporation; TEAM VANGUARD INTEGRITY PROFESSIONALS, LLC, a Nevada limited liability corporation; RONN H. BAILY, an individual; DOES 1 – 100; ROE CORPORATIONS 1 – 100, inclusive, | ) ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. | ) | |

This matter coming before the Court on Defendants' Motion to Compel Arbitration (#12-1). The Court has considered the Motions, the pleadings on file, and oral argument on behalf of all parties. IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration (#12-1) is DENIED.

**BACKGROUND**

Plaintiff, formerly Vice President of Domestic Sales at Vanguard Integrity Professionals, Inc. ("Vanguard"), brought suit against his former employer, alleging unlawful

employment discrimination, breach of contract, and several state tort law claims. These claims all arose from either Plaintiff's employment at Vanguard or from the termination of that employment. Plaintiff originally brought suit in Nevada state court, but Defendants successfully removed the case to federal court.

Defendants now move to compel arbitration (#12-1), relying on a clause in the offer of employment, signed by Plaintiff, dated January 13, 2004 ("Offer Letter"). Plaintiff opposes the motion (#16), contending that he never agreed to arbitrate his employment claims, arbitration would be unfairly burdensome, and he is entitled to a jury trial for his claim brought under the Age Discrimination in Employment Act, 29 U.S.C. § 626.

**STANDARD OF REVIEW**

By enacting the Federal Arbitration Act ("FAA"),

> Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. Section 2 [of the Act], therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable "upon such grounds as exist at law or in equity for the revocation of any contract."

Perry v. Thomas, 482 U.S. 483, 489 (1987) (quoting Southland Corp. v. Keating, 465 U.S. 1, 11–12 (1984)); see also Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).

Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA applies to arbitration clauses within employment agreements, except for the employment agreements of transportation workers. See Circuit City Stores, Inc. v.

Adams, 532 U.S. 105 (2001).

"Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

"Case law following the passage of the [FAA] reflects unequivocal support of agreements to have third parties decide disputes—the essence of arbitration." Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1208 (9th Cir. 1998) (quoting AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985)). No magic words such as "arbitrate" or "binding arbitration" or "final dispute resolution" are required to obtain the benefits of the FAA. Id. In other words, if the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration. Id.

## DISCUSSION

The Offer Letter signed by Plaintiff contains the following paragraph:

> In the event of any dispute arising under this Employment Agreement, including any dispute regarding the nature, scope or quality of services provided by either Party hereto, it is hereby agreed that such dispute shall be resolved by binding arbitration to be conducted by the American Arbitration Association (AAA), to be arbitrated in accordance with their rules and procedures in Las Vegas, Nevada. In the event of any such arbitration, pending resolution of the arbitration and award of costs by the arbitrator, each Party hereto shall be responsible for their own costs.

(Defs.' Mot., Ex. 1 at 5–6.)

**I. Enforceability of the Putative Agreement to Arbitrate**

Plaintiff argues that the agreement to arbitrate is unconscionable because it imposes undue arbitration costs making it prohibitively expensive for him to bring his claims.

Plaintiff fears that if he is compelled to arbitrate, he will have to make an initial payment of as much as $4000 in administrative fees. Further, because the language of the arbitration agreement states that "each Party hereto shall be responsible for their own costs," Plaintiff fears he will be required to pay half of the daily cost of the arbitrator.

However, under the administrative fee schedule for disputes arising out of employer-promulgated plans, Plaintiff is only required to pay a non-refundable filing fee capped at $125 (changing to $150), and a fee if he causes the postponement or cancellation of a scheduled hearing. (See National Rules for the Resolution of Employment Disputes contained in Pl.'s Opp'n, Ex. B.) This cost is not prohibitively expensive, given that the cost to file a complaint in Nevada State Court is $148, and the cost to file a complaint in federal court is $350.

**II. Arbitrability of ADEA Claim**

The Age Discrimination in Employment Act (ADEA) entitles a person "to a trial by jury [for] any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter." 29 U.S.C. § 626(c)(2). The Older Workers' Benefit Protection Act (OWBPA) amended the ADEA to add a "knowing and voluntary" requirement to contractual waivers of statutory rights and claims under the ADEA. See OWBPA, Pub. L. 101-433, 101 Stat. 978 (1990); ADEA, 29 U.S.C. §§ 621–634. To be "knowing and voluntary," the OWBPA requires, among other things, that the waiver specifically refer to claims arising under the ADEA, and the agreement cannot waive claims that may arise after the date of the agreement. See 29 U.S.C. § 626(f)(1)(B) and (C).

Plaintiff argues that, because the ADEA was not specifically mentioned in the arbitration agreement, his implied waiver of the right to a jury trial for ADEA claims was not knowing and voluntary under the OWBPA.

However, in a similar case regarding an agreement to arbitrate, the Supreme Court suggested that the waiver of a jury trial in favor of arbitration need not be "knowing and voluntary" in accordance with the OWBPA. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 29 (1991). In Gilmer, an employee sued his employer under the ADEA. The employer moved to compel arbitration, relying on an arbitration clause in the employee's contract for registration as a securities representative with the New York Stock Exchange. The Supreme Court found the arbitration clause controlling due to the federal policy favoring arbitration grounded in the FAA. The Court held that the burden is on the party seeking to avoid arbitration to show that Congress intended to preclude a waiver of judicial forum for ADEA claims. Id. at 26. "If such an intention exists, it will be discoverable in the text of the ADEA, its legislative history, or an 'inherent conflict' between arbitration and the ADEA's underlying purposes." Id. The Court did not take the OWBPA into account for its holding in Gilmer because the contract in question was made prior to the effective date of the amendments, but the Court implied that the OWBPA would not have affected the outcome when it noted that even recent amendments to the ADEA (referring to the OWBPA) did not explicitly preclude arbitration or other nonjudicial resolution of ADEA claims. Id. at 29.

After Gilmer, several courts have discussed the affect of the OWBPA on an agreement to arbitrate, but the Court of Appeals for the Ninth Circuit has not yet addressed the matter. There is a split on the issue among the district courts within the Circuit. Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp. 2d 1060, 1063 (S.D. Cal. 1999), held that the "knowing and voluntary" requirement applies to all rights guaranteed by the ADEA, including the procedural right to a jury trial. The District Court for the Western District of Washington disagreed with Thiele, holding that the "knowing and voluntary" requirement of the OWBPA does not apply to an arbitration agreement's implicit waiver of the right to a jury

trial. Browning v. 24 Hour Fitness, Inc., 2006 WL 151933 (W.D. Wash. 2006). Three circuit courts have addressed the question, all of them holding that the "knowing and voluntary" requirement of the OWBPA applies only to substantive rights, not to procedural rights such as the right to a jury trial. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, 170 F.3d 1, 21 (1st Cir. 1999) ("[T]here was no congressional intent to preclude pre-dispute arbitration agreements manifested in . . . the OWBPA"); Seus v. John Nuveen & Co., 146 F.3d 175 (3d Cir. 1998); Williams v. Cigna Fin. Advisors, Inc., 56 F3d 656 (5th Cir. 1995).

Plaintiff urges the Court to follow the nonbinding decision in Thiele, involving similar facts with regard to the ADEA claim, which held that the "knowing and voluntary" requirement applies to both procedural and substantive rights guaranteed in the statute. Defendants argue that the First, Third, and Fifth circuit court decisions are correct, and that this Court should not apply the "knowing and voluntary" requirement to the waiver of procedural rights.

**A. Support for Plaintiff's Argument**

The court in Thiele decided that the plain language of the ADEA is clear in its protection of statutory rights, and does not distinguish between procedural and substantive rights. 59 F. Supp. 2d. at 1064. "The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers and we are bound to take Congress at its word." Oubre v. Entergy Ops., Inc., 522 U.S. 422, 422 (1998). "The Supreme Court has instructed that unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete." Foxgord v. Hischemoeller, 820 F.2d 1030, 1034 (9th Cir. 1987).

Thiele goes on to decide that,

[e]ven if the plain meaning of this statute were not clear, the legislative history

>   of the OWBPA supports the plain meaning interpretation. By enacting the OWBPA, Congress sought to ensure "that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA." S.Rep. No. 101-263. Where Congress expresses an intention to protect a claimant's right to "legal" relief, it intends to protect that claimant's right to a jury trial on demand: "In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to [a] jury trial. . . . [B]y providing specifically for 'legal' relief, Congress knew the significance of the term 'legal,' and intended that there would be a jury trial on demand. . . ." Lorillard v. Pons, 434 U.S. 575, 583 (1978). In the legislative history of the OWBPA, Congress expressed "unequivocal approval" for the Lorillard decision. H.R. Rep. No. 101-664 (1990).
>
>   Furthermore, Congress expressly intended to accord "basic due process protections to employees who are asked to execute waivers" by enacting the OWBPA. S.Rep. No. 101-263. Congress further discussed other procedural rights during its deliberations and expressly referred to the right to a jury trial: "[W]here procedural protections are involved, the ADEA should treat older workers differently . . . . ADEA plaintiffs have the right to jury trials. . . ." H.R.Rep. No. 101-664 (emphasis added). This Court therefore concludes that the right to a jury trial is included in the rights designated in § 626(f)(1).

Thiele, 59 F. Supp. 2d at 1064-65 (alterations in original).

**B. Support for Defendants' Argument**

Defendants cite the First and Fifth Circuits, which held the "knowing and voluntary" requirement applies only to substantive rights under the ADEA, not procedural rights such as the right to a jury trial. Rosenberg, 170 F.3d at 13; Williams, 56 F.3d at 660–61. Both courts refer to the Supreme Court's statement in Gilmer that recent amendments have not shown an intention on the part of Congress to preclude the waiver of a jury trial in favor of arbitration. Id., see Gilmer, 500 U.S. at 26.

>   We recognize that Congress, through the OWBPA, has protected terminated employees who waive their substantive rights under the ADEA in exchange for a more favorable severance package; however, we find no clear indication that Congress was likewise concerned with protecting employees who agree to arbitrate claims that may arise during the course of their employment.

Williams, 56 F.3d at 661. The court in Rosenberg noted that the legislative history of the OWBPA discussed the assurance of "legal" relief, but it refrained from concluding that

1  "legal" refers strictly to a judicial forum, and not arbitration.  170 F.3d at 12.

2  The court in Williams used a policy argument to further bolster its decision not to
3  apply the "knowing and voluntary" requirements to the waiver of a right to a judicial forum.
4  The OWBPA does not allow a "waive[r of] rights or claims that may arise after the date the
5  waiver is executed."  29 U.S.C. 626(f)(1)(C).  Applying this requirement to an agreement to
6  arbitrate would make it impossible to enforce any pre-dispute agreement to arbitrate ADEA
7  claims.  Williams, 56 F.3d 661.  "We decline to remove from the province of arbitration all
8  such pre-dispute agreements absent a clear indication that Congress intended such a result."
9  Id.

### C. Conclusion as to the Arbitrability of the ADEA Claim

The arguments of both Plaintiff and Defendants are strong.  However, Plaintiff has not sufficiently met his burden of showing that Congress intended to preclude a waiver of judicial forum for ADEA claims.  The OWBPA does not clearly preclude the waiver of a jury trial in favor of arbitration, and there is no evidence that Congress intended to undercut every pre-conflict agreement to arbitrate ADEA claims.

### III. Application of Arbitration Agreement to Plaintiff's Employment Claims

A court should not compel a party to arbitrate issues they have not agreed to arbitrate.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995); AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648 (1986).  State contract law governs a court's determination as to what issues the parties have agreed to arbitrate.  Nevada courts generally honor parties' agreements to arbitrate as set forth in the language of the arbitration agreement.  See Mikohn Gaming Corp. v. McCrea, 89 P.3d 36 (Nev. 2004).

The Ninth Circuit has adopted a liberal view with regard to agreements to arbitrate.

We ordinarily will not except a controversy from coverage of a valid arbitration

clause unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. This liberal construction of arbitration agreements is in harmony with the national policy favoring arbitration that Congress evinced when it enacted the Federal Arbitration Act.

Marchese v. Shearson Hayden Stone, Inc., 734 F.2d 414, 419 (1984) (internal quotations and citations omitted).

Plaintiff's asserted dispute concerns alleged age, religious, and disability discrimination. The scope of the agreement to arbitrate is limited to matters arising under the Offer Letter. The Offer Letter does not discuss or refer to discrimination at all, and hence, such a dispute does not fall under the Offer Letter. Accordingly, the arbitration clause is not designed to cover the dispute asserted by Plaintiff.

Defendants argue that the language of the agreement to arbitrate is sufficiently broad, including discrimination claims under the "quality of services" in the employment relationship. However, the agreement to arbitrate covers "any dispute arising under this Employment Agreement,[1] including any dispute regarding the nature, scope or quality of services provided by either Party hereto." The "quality of services" cannot be read to include actions outside of the scope of the Employment Agreement because it would render the word "including" nonsensical in the sentence.

Therefore, although the arbitration agreement between Plaintiff and Defendants is generally valid and enforceable, it does not cover Plaintiff's asserted causes of action, and thus the Court will not order arbitration in this case.

---

[1] Plaintiff notes that there is no document entitled "Employment Agreement." The language in the arbitration clause reading "*this* Employment Agreement" implies that the Offer Letter itself is the Employment agreement referred to in the agreement to arbitrate.

# CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration (#12-1) is DENIED.

DATED: July 17, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE